**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HENRY M.,[1] | Case No. 2:24-cv-06451-MAA |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |
| FRANK BISIGNANO,[2] Commissioner of Social Security, | |
| Defendant. | |

## I.  INTRODUCTION

On July 31, 2024, Plaintiff Henry M. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became Commissioner of Social Security on May 6, 2025. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Martin O'Malley as Defendant in this suit.

1  Act.  (Compl., ECF No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to
2  the jurisdiction of a United States Magistrate Judge.  (ECF Nos. 4, 8.)  On October
3  1, 2024, Defendant filed an Answer (ECF No. 11) and Certified Administrative
4  Record ("AR," ECF No. 11-1).  On November 5, 2024, Plaintiff filed a Brief.  (Pl.'s
5  Br., ECF No. 12.)  On January 6, 2025, Defendant filed a Response Brief.  (Def.'s
6  Br., ECF No. 16.)  Plaintiff did not file a Reply Brief.  This matter is fully briefed
7  and ready for decision.
      The Court deems the matter appropriate for resolution without oral argument.
8  
9  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons discussed below, the
10 Court affirms the decision of the Commissioner.

11 

12 **II.    SUMMARY OF ADMINISTRATIVE PROCEEDINGS**
13      On or about December 21, 2020, Plaintiff protectively filed a Title XVI
14 application for benefits.[3]  (AR 114–44.[4])  The same day, Plaintiff appointed "the
15 Los Angeles County CBEST Program" to act as his representative, in a form signed
16 by Plaintiff and by Enrique Vizcarra on behalf of CBEST.  (AR 110–13.)  The
17 Commissioner denied Plaintiff's claim on May 6, 2021 in a letter sent to Plaintiff
18 and to Mr. Vizcarra at CBEST.  (AR 82–86.)  On June 28, 2021, Plaintiff filed a
19 Request for Reconsideration.  (AR 81.)  In a letter dated November 1, 2021,
20 Plaintiff was informed that his claim had been denied upon reconsideration.  (AR
21 56.)  This letter advised Plaintiff that he had "60 days to ask for a hearing," with an
22 assumption that he received the letter "5 days after the date on it," and that he
23 would need "a good reason for waiting more than 60 days to ask for a hearing."

24 _____

25 [3] The applications appear to have been signed by Plaintiff on December 21, 2020.
   (AR 118, 142.)  Elsewhere in the record, Plaintiff's original application date is given
26 as December 17, 2020.  (*See* AR 19.)
27 [4] Citations to the Administrative Record are to the AR number.  Pinpoint citations
   to other docketed documents are to the page numbers in the CM/ECF-generated
28 headers.

(AR 56.)  This letter, too, was sent to both Plaintiff and to Mr. Vizcarra at CBEST.  (AR 54–58.)

The deadline for requesting a hearing was therefore January 5, 2022.  Plaintiff concedes that he filed an untimely request for hearing ("RFH") before an Administrative Law Judge ("ALJ").  (Pl.'s Br. 2.)  Just how untimely, however, is somewhat unclear from the record.  Plaintiff's RFH, a completed Form HA-501 (AR 52–53), includes Plaintiff's typed name in the "Claimant Signature" field and "CBEST Program" in the "Name of Representative" field; next to each of these fields, in the corresponding "Date" field, the date is given as August 26, 2022.  (AR 52.)  However, the RFH also bears a facsimile transmission timestamp of December 16, 2022 at 10:06:19 a.m.  (*Id.*)

The RFH appears to have been transmitted on December 16, 2022 together with several other documents, including:  (1) a Form SSA-3441-BK Disability Report – Appeal ("Disability Report"), which included some updated medical information (AR 40–49), and (2) a Form SSA-795 Statement of Claimant or Other Person ("Good Cause Statement") (AR 50–51), which acknowledged that Plaintiff had "missed his deadline to appeal his case," but argued that this was "because his mental conditions prevent[ed] him from being able to manage himself and keep in contact with his service providers" and noted that Plaintiff "ha[d] been experiencing homelessness and ha[d] been in and out of psychiatric hospitals since filing his request for reconsideration."  (AR 50.)  The Good Cause Statement was signed by Jocelyn Kimmel on behalf of CBEST, with an August 26, 2022 date given in the signature line.  (AR 51.)  Both the Disability Report and the Good Cause Statement bear the December 16, 2022 facsimile transmission timestamp at the top of every page.  (AR 40–51.)  SSA staff appear to have processed the Disability Report on December 19, 2022 (*see* AR 30, 39), by completing the Electronic Disability Collection System ("EDCS") 3367 Disability Report and EDCS 3341 Disability Report Appeal (AR 29–39).

Despite the uncertainty regarding the date of submission, in a letter dated July 10, 2023, the reviewing ALJ appears to have accepted that Plaintiff filed his RFH as of August 26, 2022. (AR 25, 27.) The letter notes that this was outside the 65-day window for requesting a hearing, asserted that no good cause statement had been provided in support of a request for an extension of time, and directed that such a statement be submitted within 15 days from the date of the letter. (*Id*.) This letter was sent both to Plaintiff and to Jocelyn Kimmel at CBEST. (*Id*.)

There is nothing in the record to indicate that the SSA received any response to the July 10, 2023 letter. The next document in the file is Plaintiff's appointment of a new representative, Al Leibovic of Leibovic Law Group, which Plaintiff signed on November 22, 2023. (AR 21–24.) Then, on February 27, 2024, ALJ Elizabeth Lishner issued an Order of Dismissal for failure to establish good cause for filing an untimely appeal. (AR 19-20.) This Order again treated Plaintiff's RFH as having been filed on August 26, 2022. (AR 19.) The ALJ considered the reasons set forth in Plaintiff's Good Cause Statement, but found that Plaintiff had "not established good cause for missing the deadline to request a hearing." (AR 20.) The ALJ stated:

> At the time [the] original denial and Notice of Reconsideration [were] sent, claimant was represented by the same organization that submitted the Good Cause statement. The representative was appointed January 26, 2021, submitted the Disability Report on behalf of the claimant, and was sent a copy of the original denial notice and the reconsideration notice. These were sent to the correct address and not returned as undeliverable. The representative had a duty to respond on claimant's behalf and failed to do so. 20 CFR 416.1540. Further, the representations in the Good Cause statement indicate[] that claimant ha[d] been in and out of psychiatric hospitals which prevented him from filing the Req[uest] for Hearing. These representations are insufficient. No supporting documentation was provided. Since the representative made this claim, they must be aware of the hospitals where claimant was a patient, so it was incumbent on the representative to either produce the hospital documents or, at the very

> least, identify the hospitals to allow us to request the records. Accordingly, the request for hearing is untimely and the case is dismissed.

(*Id.*)  Notice of the issuance of this order and of the dismissal of Plaintiff's RFH was sent the same day to both Plaintiff and to Mr. Leibovic.  (AR 16–18.)

On April 4, 2024, Plaintiff requested review of the ALJ's February 27, 2024 Order of Dismissal.  (AR 13–15.)  On April 26, 2024, Plaintiff submitted a statement in support of the request for review, arguing that good cause was present because Plaintiff "had changed representatives from the time the Statement of Good Cause was submitted prior to the time the Notice of Dismissal was issued."  (AR 4.) On June 6, 2024, the Appeals Council denied Plaintiff's request for review, rendering this decision final.  (AR 1-3.)

### III. STANDARD OF REVIEW

Under the Social Security Act, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . ."  42 U.S.C. § 405(g) ("Section 405(g)").  While "in the ordinary case," the phrase "made after a hearing" means after "an ALJ hearing," it is "clear that an ALJ hearing is not an ironclad prerequisite for judicial review."  *Smith v. Berryhill*, 587 U.S. 471, 479–80 (2019).  Thus, a decision by the Appeals Council denying a request to review an ALJ's dismissal of a request for a hearing should be considered a "final decision . . . made after a hearing" within the meaning of Section 405(g).  *See Wilson v. Comm'r of Soc. Sec.*, No. 21-10278, 2021 WL 3878252, at *1–2 (11th Cir. Aug. 31, 2021) (reversing district court's dismissal for lack of subject matter jurisdiction of challenge to ALJ's finding that good cause had not been shown to excuse failure to attend hearing); *Curlee v. Comm'r of Soc. Sec.*, No. 1:20-cv-00145-SAB, 2022 WL 993005, at *3 (E.D. Cal. Apr. 1, 2022)

(analogizing to *Smith* and holding that the district court had jurisdiction over the Appeals Council's denial of plaintiff's request to review the ALJ's dismissal for failure to attend hearing), *aff'd sub nom. Curlee v. O'Malley*, No. 22-15655, 2024 WL 2103275 (9th Cir. May 10, 2024).

Section 405(g) "contains two separate elements: first, a 'jurisdictional' requirement that claims be presented to the agency, and second, a 'waivable . . . requirement that the administrative remedies prescribed by the Secretary be exhausted.'" *Smith*, 587 U.S. at 478. Section "405(g)'s hearing requirement involves the 'nonjurisdictional element of administrative exhaustion,' which may be waived by the agency or excused by the courts." *Wilson*, 2021 WL 3878252, at *3 (quoting *Smith*, 587 U.S. at 478). Further:

> In *Smith*, the Supreme Court made clear that "in an ordinary case [dismissed by the Social Security Administration on procedural grounds], a court should restrict its review to the procedural ground that was the basis for the Appeals Council dismissal and (if necessary) allow the agency to address any residual substantive questions in the first instance." *Smith*, 139 S. Ct. at 1780. Furthermore, such decisions should be reviewed for "abuse of discretion as to the overall conclusion, and 'substantial evidence' 'as to any fact.'" *Id*. at 1779 n.19 (citation omitted).

*Curlee*, 2022 WL 993005, at *3 (alteration in original).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at

1035). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## IV. DISCUSSION

### A. Disputed Issue

There is just one disputed issue in this case: whether the ALJ committed reversible error by failing to properly evaluate whether Plaintiff had shown good cause for his failure to make a timely request for a hearing before the ALJ. (*See* Pl.'s Br. 1; Def.'s Br. 2.) For the reasons discussed below, the Court finds that the ALJ's decision is supported by substantial evidence and is not based on legal error.

### B. Applicable Law

"The administrative review process governing applications for social security benefits 'consists of several steps, which usually must be requested within certain time periods and in [a particular] order.'" *Dexter v. Colvin*, 731 F. 3d 977, 978 (9th Cir. 2013) (quoting 20 C.F.R. § 404.900(a)). "If a dissatisfied applicant fails to take the next step within the stated time period, the applicant loses the right to further administrative or judicial review unless she can show that there was good cause for her failure to make a timely request for review." *Id*. (citing 20 C.F.R. § 404.900(b)). Those steps are as follows:

- At the first step, after an application for benefits has been filed, the Social Security Administration ("SSA") "makes an initial determination 'about [the applicant's] entitlement or . . . continuing entitlement to benefits or about any other matter . . . that gives [the applicant] a right to further review.'" *Id.* (quoting 20 C.F.R. § 404.900(a)(1)).

///

- At the second step, if the initial determination is unfavorable, the applicant "may request the SSA to reconsider it." *Id*. (citing 20 C.F.R. § 404.900(a)(2)).
- At the third step, if "dissatisfied with the SSA's determination upon reconsideration, [the applicant] may request a hearing before an ALJ, [20 C.F.R.] § 404.900(a)(3), who will either issue a decision, *see id.* § 404.953, or in certain cases, dismiss the request, *see id.* § 404.957." *Dexter*, 731 F.3d at 978.
- At the fourth step, an applicant unhappy with the ALJ's decision may seek review by the Appeals Council. *Id.* (citing 20 C.F.R. § 404.900(a)(4)). "The Appeals Council's decision is final and in certain cases is subject to review in district court." *Id.* at 978–79 (citing 20 C.F.R. § 404.900(a)(5)).

The Supreme Court has summarized these steps as follows:

> [C]laimants must generally proceed through a four-step process before they can obtain review from a federal court. First, the claimant must seek an initial determination as to his eligibility. Second, the claimant must seek reconsideration of the initial determination. Third, the claimant must request a hearing, which is conducted by an ALJ. Fourth, the claimant must seek review of the ALJ's decision by the Appeals Council. *See* 20 CFR § 416.1400. If a claimant has proceeded through all four steps on the merits . . . § 405(g) entitles him to judicial review in federal district court.

*Smith*, 587 U.S. at 475–76.

If an applicant does not complete one of those steps in a timely manner, then the applicant must make a showing of good cause to receive an extension of time in which to do so. Specifically, with respect to requesting a hearing before an ALJ at the third step:

> If you have a right to a hearing but do not request one in time, you may ask for more time to make your request. The request for an extension of time must be in writing and it must give the reasons why the request for a hearing was not filed within the stated time period. You may file your request for an extension of time at one of our offices. If you show that you had good cause for missing the deadline, the time period will be extended. To determine whether good cause exists, we use the standards explained in § 416.1411.

20 C.F.R. § 416.1433(c). The good cause standard set forth in 20 C.F.R. § 416.1411 states:

> (a) In determining whether you have shown that you have good cause for missing a deadline to request review we consider—
>
> > (1) What circumstances kept you from making the request on time;
> >
> > (2) Whether our action misled you;
> >
> > (3) Whether you did not understand the requirements of the Act resulting from amendments to the Act, other legislation, or court decisions; and
> >
> > (4) Whether you had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented you from filing a timely request or from understanding or knowing about the need to file a timely request for review.
>
> (b) Examples of circumstances where good cause may exist include, but are not limited to, the following situations:
>
> > (1) You were seriously ill and were prevented from contacting us in person, in writing, or through a friend, relative, or other person.
> >
> > (2) There was a death or serious illness in your immediate family.
> >
> > (3) Important records were destroyed or damaged by fire or other accidental cause.
> >
> > (4) You were trying very hard to find necessary information to support your claim but did not find the information within the stated time periods.
> >
> > (5) You asked us for additional information explaining our action within the time limit, and within 60 days of receiving the explanation you requested reconsideration or a hearing, or within 30 days of receiving the explanation you requested Appeals Council review or filed a civil suit.
> >
> > (6) We gave you incorrect or incomplete information about when and how to request administrative review or to file a civil suit.

(7) You did not receive notice of the initial determination or decision.

(8) You sent the request to another Government agency in good faith within the time limit and the request did not reach us until after the time period had expired.

(9) Unusual or unavoidable circumstances exist, including the circumstances described in paragraph (a)(4) of this section, which show that you could not have known of the need to file timely, or which prevented you from filing timely.

20 C.F.R. § 416.1411.

### C. Analysis

The Court finds that it has jurisdiction over this matter, despite the fact that the Commissioner's final decision regarding Plaintiff's claim was not made after a hearing held before an ALJ. *See Smith*, 587 U.S. at 479–80; *Wilson*, 2021 WL 3878252, at *1–2; *Curlee*, 2022 WL 993005, at *3. Nor has the Commissioner argued otherwise. (*See generally* Def.'s Br.) Further, the Commissioner has not raised the issue of administrative exhaustion, thus waiving any possible argument that the Court should not review the dismissal of Plaintiff's claim as a "final decision . . . made after a hearing" within the meaning of Section 405(g). *See Smith*, 587 U.S. at 478 ("[A]dministrative exhaustion. . . . may not only be waived by the agency . . . but also excused by the courts."); *Curlee v. O'Malley*, No. 22-15655, 2024 WL 2103275, at *1 (9th Cir. May 10, 2024) (finding that the appeal was proper because "the agency ha[d] waived the requirement of administrative exhaustion").

Turning to the question presented, it appears that Plaintiff completed the first two steps of the four-step agency review process without issue. It is undisputed, however, that Plaintiff did not timely complete the third step. Reconsideration of the SSA's initial denial of benefits was denied on November 1, 2021, in a letter sent both to Plaintiff and to his representative. (AR 54–58.) Plaintiff's deadline for

requesting a hearing before the ALJ was therefore January 5, 2022. (AR 56.) It is undisputed that no such request was made until—at the earliest—August 26, 2022, almost seven months after the deadline. (*See* Pl.'s Br. 3.) Arguably, the request was not actually transmitted to the SSA until December 16, 2022, over a year after the letter denying reconsideration was sent. (AR 40–53.)

Initially, on July 10, 2023, the ALJ reviewing Plaintiff's RFH noted that it was untimely because August 26, 2022 was more than 65 days from November 1, 2021, the date of the letter denying reconsideration. (AR 25–28.) The ALJ then asserted that no Good Cause Statement requesting an extension of the deadline had been provided, and directed that such a statement should be submitted within 15 days. (*Id.*) Later, however, on February 27, 2024, the ALJ considered the reasons set forth in Plaintiff's original Good Cause Statement and found that Plaintiff had "not established good cause for missing the deadline to request a hearing." (AR 20.)

In the Order of Dismissal, the ALJ first noted that:

> The claimant filed the request for hearing more than 65 days after the date of the notice of reconsideration determination and the claimant has not established that he did not receive this determination within 5 days of this date. Accordingly, the request for hearing was not filed within the stated time period.

(AR 19.) Plaintiff does not argue either that he did not receive the November 1, 2021 letter denying reconsideration within five days or that he in fact did request a hearing within the deadline. (*See generally*, Pl.'s Br.) Instead, Plaintiff takes issue with the ALJ's determination that Plaintiff's Good Cause Statement was not sufficient to establish good cause for missing the deadline. (Pl.'s Br. 3.)

The ALJ summarized the Good Cause Statement as stating that Plaintiff "missed the deadline to request a hearing because . . . his mental conditions prevent[ed] him from [being] able to manage himself and keep in contact with his service providers" and because he had "been experiencing homelessness and ha[d]

11

been in and out of psychiatric hospitals since filing his request for reconsideration with CBEST." (AR 19.) The ALJ's Order of Dismissal gives two reasons for finding these reasons insufficient to show good cause: (1) Plaintiff was represented by the same organization from the time his initial application was filed through the submission of the Good Cause Statement, and the representative had an obligation to respond on Plaintiff's behalf; and (2) because the "representations in the Good Cause statement indicat[ing] that claimant ha[d] been in and out of psychiatric hospitals which [had] prevented him from filing" the RFH were not supported with medical records or information about where those records could be obtained, the unsupported representations were not sufficient to show good cause. (AR 20.)

Plaintiff argues both that the amount of time it took to evaluate his Good Cause Statement was "unacceptable" and that the ALJ incorrectly stated that Plaintiff had not provided a list of medical providers and hospitals where he had been treated when, in fact, that information had been provided with the Good Cause Statement. (Pl.'s Br. 3–4.) As to the first argument, Plaintiff has not cited any authority to support the suggestion that the length of time it takes for the SSA to review a Good Cause Statement has any dispositive impact on the determination of whether good cause has been shown. Further, his argument about how long it took to review his Good Cause Statement is dependent on the assumption that it was actually submitted to the SSA on August 26, 2022, which is not supported by the record before this Court, in which the only copy of the Good Cause Statement presented bears a facsimile transmission date of December 16, 2022. (AR 40–53.) No declaration or other evidence has been presented to suggest that the December 16, 2022 transmission was a duplicate submission of documents that had already been sent months before.

However, Plaintiff's primary argument appears to be that Plaintiff had provided a list of medical providers and hospitals where he had been treated with his Good Cause Statement, thus making the ALJ's reliance on Plaintiff's

12

representative's failure to provide this information a reversible error. The problem with this argument is that the list of medical providers and hospitals provided with the Good Cause Statement includes no information regarding any time period relevant to Plaintiff's request for an extension of the deadline by which he was required to submit a written request for a hearing before an ALJ. (*See* AR 42–49.) The Disability Report submitted with the Good Cause Statement makes clear that there was a change in Plaintiff's medical condition as of June 2022, when his "MH symptoms . . . increased in frequency and intensity," and he was "experiencing anxiety attacks, visual hallucinations, delusions, crying spells, suicidal ideation, etc." (AR 43.) The information provided in that form shows that Plaintiff had visited a doctor (and had blood tests performed) twice prior to June 2022, once in March 2022 and once in May 2022, for "[s]kin rash, stomach illness, etc., [and] [g]eneral physical health concerns." (AR 44.) Otherwise, the Disability Report shows that Plaintiff was treated at America's Recovery Center in Pomona, California in June 2022. (AR 49.) He was treated at Behavioral Health Urgent Care Center in City of Industry, California, on July 23, 2022. (*Id.*) He received psychiatric care—possibly inpatient, though it is not clear—from the L.A. Downtown Medical Center from July 23 to August 2, 2022. (AR 47.) He received care on August 19, 2022 from a doctor he had been seeing for psychiatric and therapeutic counseling since 2020. (AR 45.) And, at some unspecified point in time in 2022, Plaintiff appears to have had an inpatient stay at Pomona Valley Hospital Medical Center in Pomona, California. (AR 46.)

The relevant time period in which good cause needed to be shown, however, was November 1, 2021 through January 5, 2022. (AR 54–58.) By January 6, 2022, Plaintiff had already missed the deadline to request a hearing before an ALJ. While the Court is sympathetic to Plaintiff's difficulties, the fact that his condition deteriorated significantly in June 2022 (AR 43) is ultimately irrelevant to the question of why he missed a deadline almost six months earlier. Thus, the record

before the ALJ at the time the Order of Dismissal was issued did not include any facts about what happened prior to the January 5, 2022 deadline that may have caused Plaintiff to miss it. It was therefore not incorrect to find that the assertion that Plaintiff had missed that deadline because he had "been in and out of psychiatric hospitals" was not supported by any evidence that Plaintiff had been hospitalized prior to the deadline. Further, no attempt has been made to supplement that record before this Court. No additional explanation has ever been provided as to what Plaintiff may have been experiencing *prior to January 5, 2022* that may have prevented him from filing a timely request for a hearing. Finally, Plaintiff has never addressed the question of why Plaintiff's representative was unable to submit a timely request for a hearing on Plaintiff's behalf.

On this record, the Court cannot find that the ALJ's determination that Plaintiff had not shown good cause for failing to request a hearing by the deadline was not supported by substantial evidence. *See Curlee*, 2022 WL 993005, at *8. The Appeals Council's decision to deny Plaintiff's request for review of the ALJ's dismissal of plaintiff's claim on procedural grounds was therefore not an abuse of discretion. *See Curlee*, 2024 WL 2103275, at *1 (finding "no abuse of discretion in the ALJ's dismissal of [claimant's] request for a hearing before the ALJ").

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision was supported by substantial evidence in the administrative record and that the Commissioner's dismissal of Plaintiff's claim was not an abuse of discretion. The Court therefore affirms the Commissioner's decision.

///
///
///
///

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner is DENIED. It is FURTHER ORDERED that judgment be entered in favor of the Commissioner and against Plaintiff.

**IT IS SO ORDERED.**

DATED: August 20, 2025

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE